1  **BRIAN G. WOLF, ESQ. (BAR NO. 135257)**
   **DAVID B. JONELIS, ESQ. (BAR NO. 265235)**
2  **LAVELY & SINGER**
   **PROFESSIONAL CORPORATION**
3  2049 Century Park East, Suite 2400
   Los Angeles, California 90067-2906
4  Telephone: (310) 556-3501
   Facsimile: (310) 556-3615
5  Email: bwolf@lavelysinger.com
          djonelis@lavelysinger.com
6
   Attorneys for Plaintiff
7  BAKER FILM FUND, LLC

8

9                 UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12  BAKER FILM FUND, LLC, a          )  CASE NO. 2:16-cv-07979 PSG (PLAx)
    Delaware limited liability company, )
13                                     )
            Plaintiff,                  )  **FIRST AMENDED COMPLAINT**
14                                     )  **FOR**:
        v.                             )
15                                     )  **(1)   BREACH OF CONTRACT**
                                       )  **(2)   FRAUD; and**
16  WEATHERVANE PRODUCTIONS, )         )  **(3)   NEGLIGENT**
    INC., a Nevada corporation;        )         **MISREPRESENTATION**
17  FORREST CAPITAL PARTNERS, )        )
    INC., a Florida corporation; WELLS )  **REQUEST FOR JURY TRIAL**
18  FARGO ADVISORS, LLC, a            )
    Delaware limited liability company; )
19  WELLS FARGO BANK, N.A., a         )
    national association; JASON VAN    )
20  EMAN, an individual; BENJAMIN      )
    MCCONLEY, an individual; and       )
21  DOES 1 through 20, inclusive,      )
                                       )
22          Defendants.                )
    _____   )
23

24

25

26

27

28

1    Plaintiff BAKER FILM FUND, LLC ("BFF" or "Plaintiff") hereby alleges as

2    follows:

3                    **SUMMARY OF THE ACTION**

4         1.      This case arises out of a fraudulent ponzi scheme by defendants Jason

5    Van Eman ("Van Eman") and Benjamin McConley ("McConley") to finance

6    independent motion pictures.   The scheme was dependant upon the direct

7    participation and support of defendants Wells Fargo Bank, N.A. ("WFB") and Wells

8    Fargo Advisors, LLC ("WFA") – two entities with a well-documented history of

9    engaging in fraudulent banking practices, including by opening false and fraudulent

10   accounts for their own benefit.  In this case, WFB and WFA knowingly facilitated and

11   colluded in the fraudulent scheme by inducing third parties (like BFF) to enter into

12   co-financing agreements with Van Eman and McConley and then deposit substantial

13   funds into WFB accounts, to be managed by WFA.  The scheme generally worked as

14   follows:

15        •      Van Eman and McConley would represent to potential co-financiers and

16               producers of motion pictures that defendants Weathervane Productions,

17               Inc. ("Weathervane") and Forrest Capital Partners, Inc. ("FCP") had an

18               established multi-million line of credit with WFB that was available to

19               co-finance motion pictures.

20        •      WFA and WFB, through their respective employees and managing

21               agents Paul Zoch ("Zoch") and Benjamin Rafael ("Rafael"), facilitated

22               and colluded in the fraudulent scheme by verifying the existence of the

23               purported WFB line of credit available to Weathervane and FCP, and

24               that FCP and McConley were "elite" clients in "great standing" with

25               WFA and WFB.  WFA and WFB further participated in and facilitated

26               the fraudulent scheme by representing that WFB would serve as the

27               depository bank for the production account and that WFA would

28               manage the funds deposited into the account.

2

●    After the production account was opened with WFB, the unsuspecting co-financier would deposit its share of the motion picture budget into the account, whereafter Weathervane and FCP would abscond with the co-financier's funds or, at a minimum, delay or fail to contribute their share of the motion picture's budget as agreed, thus causing the production of the picture to be cancelled and substantial damages to be suffered by the co-financier and others with a profit participation in the picture.

2.    As alleged herein, Plaintiff BFF was one of the victims of the above-described scheme. Relying on the representations that Weathervane and FCP were financially backed and qualified by WFB and WFA, and ready and able to co-finance motion pictures with BFF, BFF entered into a co-financing agreement with Weathervane and FCP, pursuant to which BFF agreed to co-finance the production of four (4) motion pictures. Under this agreement, BFF would receive the return of its capital contribution plus interest together with a producer fee and other fees and contingent compensation with respect to each of the motion pictures to be produced pursuant to the parties' agreement.

3.    Pursuant to the co-financing agreement, and in reliance on the warranties and representations made by and on behalf of Weathervane, FCP, WFB and WFA, BFF made an initial deposit of $1,500,000 into the production account for the first motion picture to be co-financed pursuant to the agreement, and further incurred development, pre-production expenses and legal costs of approximately $400,000. However, Weathervane and FCP subsequently failed to perform their agreed upon material obligations, resulting in the cancellation of the production of the first motion picture and BFF losing the fixed and contingent payments it would have received had the picture been produced together with other agreed upon valuable consideration.

4.    As a result of the wrongful and fraudulent conduct engaged in by all of the defendants as alleged herein, BFF seeks to recover compensatory and punitive

1   damages, together with its attorneys fees' and costs incurred in bringing this action.

2   **THE PARTIES**

3   5.   Plaintiff BFF is a Delaware limited liability company with its principal

4   place of business in the County of Los Angeles, State of California.

5   6.   Plaintiff is informed and believes and based thereon alleges that

6   defendant Weathervane is a Nevada corporation which is, and at all times relevant

7   hereto has been, conducting business within the County of Los Angeles, State of

8   California.

9   7.   Plaintiff is informed and believes and based thereon alleges that

10  defendant FCP is a Florida limited liability company which is, and at all times

11  relevant hereto has been, conducting business within the County of Los Angeles,

12  State of California.

13  8.   Plaintiff is informed and believes and based thereon alleges that

14  defendant WFA is a Delaware limited liability company which is, and at all times

15  relevant hereto has been, conducting business within the County of Los Angeles,

16  State of California.  Plaintiff is further informed and believes that Zoch was at all

17  relevant times an employee and vice president of WFA.

18  9.   Plaintiff is informed and believes and based thereon alleges that

19  defendant WFB is a national banking association which is, and at all times relevant

20  hereto has been, conducting business within the County of Los Angeles, State of

21  California.  Plaintiff is further informed and believes that Rafael was at all relevant

22  times an employee and managing agent of WFB.  Rafael also represented to Plaintiff

23  that he was an employee and authorized agent of WFA, including during a November

24  2014 conference call with Plaintiff's transactional counsel.

25  10.   Plaintiff is informed and believes and based thereon alleges that

26  defendant Van Eman is a resident of the State of Oklahoma who is, and at all times

27  relevant hereto has been, conducting business within the County of Los Angeles,

28  State of California. Plaintiff is informed and believes and based thereon alleges that

Van Eman purports to be the president, secretary, treasurer, and sole director of Weathervane.

11.    Plaintiff is informed and believes and based thereon alleges that defendant McConley is a resident of the State of Florida who is, and at all times relevant hereto has been, conducting business within the County of Los Angeles, State of California. Plaintiff is informed and believes and based thereon alleges that McConley purports to be the CEO and sole director of FCP.

12.    Plaintiff is informed and believes and based thereon alleges that defendant Weathervane is a mere shell only and has no existence separate and apart from Van Eman.  At all times mentioned herein there existed a unity of interest and ownership between Van Eman and his company Weathervane such that any individuality and separateness between Van Eman, on the one hand, and Weathervane, on the other hand, has ceased, and Weathervane is the alter ego of Van Eman.  Accordingly, Van Eman is individually liable for all debts and obligations of Weathervane.

13.    Plaintiff is informed and believes and based thereon alleges that defendant FCP is a mere shell only and has no existence separate and apart from McConley.  At all times mentioned herein there existed a unity of interest and ownership between McConley and his company FCP such that any individuality and separateness between McConley, on the one hand, and FCP, on the other hand, has ceased, and FCP is the alter ego of McConley.  Accordingly, McConley is individually liable for all debts and obligations of FCP.

14.    Plaintiff is informed and believes and based thereon alleges that the fictitiously named defendants sued herein as Does 1 through 20, inclusive, and each of them, were in some manner responsible or legally liable for the actions, events, transactions and occurrences alleged herein.  The true names and capacities of such fictitiously named defendants whether individual, corporate, associate or otherwise, are presently unknown to Plaintiff, and Plaintiff will seek leave of Court to amend

1  this Complaint to assert the true names and capacities of such fictitiously named

2  defendants when the same have been ascertained.  For convenience, each reference

3  to a named defendant herein shall also refer to the Doe defendants, and each of them.

4  15.    Plaintiff is informed and believes and based thereon alleges that at all

5  material times each of the Defendants was the agent, employee, partner, joint

6  venturer, co-conspirator, and/or employer of the other and was at all times herein

7  mentioned acting within the course and scope of that agency, employment,

8  partnership, conspiracy, ownership or joint venture.  Plaintiff is further informed and

9  believes and based thereon alleges that the acts and conduct herein alleged of each

10  of the Defendants were known to, authorized by, and/or ratified by the other

11  defendants, and each of them.

## THE AGREEMENT AND DEFENDANTS' INITIAL MISREPRESENTATIONS

14  16.    BFF, Weathervane and FCP entered into a written financing agreement

15  dated as of November 7, 2014, as subsequently amended, pursuant to which the

16  parties each agreed to provide funding to co-finance the production of four motion

17  pictures (the "Agreement").  Pursuant to the principal terms of the Agreement, for

18  each of the four pictures, BFF agreed to deposit an agreed upon amount into a

19  production account maintained by WFB and managed by WFA, after which

20  Weathervane and FCP would match the funds contributed by BFF with collateral over

21  which WFB and WFA allegedly had a security interest, with the combination of

22  deposited funds and collateral then serving to collateralize a pre-existing line of credit

23  with WFB and WFA to be released as equity and used to finance the production costs

24  of the respective motion pictures.  Pursuant to the terms of the Agreement,

25  Weathervane and FCP agreed to contribute total financing of up to $24 Million (at

26  BFF's election) toward the production costs of the four motion pictures.

27  17.    To induce BFF to enter into the Agreement and to contribute funding for

28  the production of the pictures intended to be financed pursuant to the Agreement, Van

Eman (both individually and on behalf of Weathervane), McConley (both individually and on behalf of FCP), Zoch (on behalf of WFA) and Rafael (on behalf of WFB and WFA) represented to BFF (through BFF's principal Jonathan Baker and transactional attorney Kevin Koloff), among other things, that: (1) WFA and WFB were aware of and approved the Agreement, and would maintain and manage the master production account where the funds for the pictures would be invested; (2) Weathervane and FCP had a securitized line of credit with WFB sufficient for Weathervane and FCP to satisfy all of their financial commitments under the Agreement; (3) WFB and WFA were prepared to financially back Weathervane and FCP's financial obligations under the Agreement, and would issue an equity line of credit to Weathervane and FCP for each of the four pictures in the amounts provided by the Agreement; and (4) Weathervane, FCP, WFA and WFB had previously worked together on similar terms to fund 17 other films, which films had purportedly been fully funded and produced.

18.   The above-described representations were repeatedly made to BFF, including without limitation on the following occasions: (1) in or around August 2014, during telephone conversations and email correspondence between Van Eman and McConley, on the one hand, and BFF's transactional attorney Kevin Koloff, on the other hand; (2) during a November 6, 2014 conference call between Zoch (on behalf of WFA), McConley, and Van Eman, on the one hand, and  BFF's transactional attorney Kevin Koloff, on the other hand; (3) during a November 2014 meeting that took place at the American Film Market between Van Eman and McConley, on the one hand, and BFF's principal Jonathan Baker and transactional attorney Kevin Koloff, on the other hand; (4) during a November 2014 conference call between Rafael (on behalf of both WFB and WFA), McConley, and Van Eman, on the one hand, and  BFF's transactional attorney Kevin Koloff, on the other hand; and (5) during a December 3, 2014 conference call between Van Eman, McConley, and Zoch (on behalf of WFA), on the one hand, and BFF's principal Jonathan Baker

FIRST AMENDED COMPLAINT

1 | and transactional attorney Kevin Koloff, on the other hand.

2 |      19.    Notably, the catalyst for the above-described November 2014 conference
3 | calls with Rafael and Zoch was BFF's request to McConley and Van Eman that WFA
4 | and WFB confirm their involvement in the transaction under the Agreement.  As a
5 | result of this request, McConley and Van Eman set up the November 2014 conference
6 | calls, during which Zoch and Rafael verbally confirmed the representations set forth
7 | in Paragraph 17 above, as well as their respective status as employees and managing
8 | agents of WFA and WFB.

**DEFENDANTS' BREACHES OF THE AGREEMENT AND FURTHER**
**MISREPRESENTATIONS**

11 |      20.    Pursuant to and in furtherance of the terms and conditions of the
12 | Agreement and in reliance on the above-described warranties and representations,
13 | BFF (a) deposited $1,500,000 into the master production account for the first picture
14 | to be funded under the Agreement, and (b) further incurred development and pre-
15 | production expenses of approximately $400,000.

16 |      21.    Weathervane and FCP, on the other hand, failed to perform their material
17 | duties and obligations under the Agreement, and breached and repudiated those duties
18 | and obligations, including, without limitation, by failing to deposit their matching
19 | funds in the production account to finance the production of the first picture and
20 | repudiating and rejecting their obligations to co-finance the additional three pictures
21 | under the Agreement.

22 |      22.    When BFF attempted to address Weathervane and FCP's aforesaid
23 | material breach of the Agreement with Van Eman, McConley, Zoch, and Rafael, it
24 | was repeatedly assured that WFA and WFB continued to financially back the
25 | obligations of Weathervane and FCP under the Agreement and were prepared to
26 | provide the lines of credit to finance the four pictures under the Agreement, and that
27 | Weathervane's and FCP's matching equity contributions would be forthcoming.

28 |      23.    For example, in a series of February 2, 2015 emails between Zoch (on

behalf of WFA), Rafael (on behalf of WFA and WFB), Van Eman, McConley, and BFF's transactional attorney Kevin Koloff, Rafael confirmed that the master production account for one of the pictures under the Agreement had been set up and that the contract for that picture had been "filed with WF's back office."   Notably, Rafael's emails were sent from a general "wellsfargo.com" email address (and with an email signature block that generally stated "Wells Fargo") which made it impossible to determine whether Rafael was communicating on behalf of WFA, WFB, or both (although Rafael had verbally represented to BFF that he was an employee and authorized agent of both WFB and WFA).

24.     As a further example of the assurances given that WFA and WFB were continuing to financially back the obligations of Weathervane and FCP, on April 2, 2015, Rafael sent an email to BFF's transactional counsel, Kevin Koloff, and BFF's principal, Jonathan Baker, in which he wrote as follows:

> "I can confirm that everything has been prepared and that the account is ready to be funded. FCP and FCC are under the same umbrella and **_Forrest Capital and Ben Mcconley are in great standing_**. Mr. Mcconley, Forrest Capital and Co, Forrest Capital Partners along with his other businesses are considered to be one of our more **_elite clients_**."

Notably, at the time that Rafael sent this email attesting (on behalf of WFB and WFA) to FCP's "great standing," FCP and Weathervane had already been sued in at least two separate lawsuits for the same type of fraudulent scheme giving rise to this lawsuit (and both WFB and WFA had also been named as defendants in at least one of those lawsuits).

25.     Shortly after Rafael sent his above-described email, and relying on the assurances contained therein, BFF's principal Jonathan Baker transferred $1,000,000 into the master production account at WFB.  Mr. Baker was then sent an authorization form to sign, which was on WFA letterhead, and which purported to authorize McConley to access the master production account.

FIRST AMENDED COMPLAINT

26.     However, after more than a year passed and the matching contributions were never provided by Weathervane and FCP, it became apparent that Weathervane and FCP had no intention of satisfying their contractual obligations under the Agreement, and that the representations of all defendants had been false and fraudulent. Accordingly, BFF has been forced to file this action in order to recover the damages it has suffered on account of the above-described misconduct.

## FIRST CAUSE OF ACTION

### (For Breach of Contract – Against Weathervane and FCP)

27.     BFF realleges, adopts and incorporates by reference, each and every allegation contained in Paragraphs 1 through 26, inclusive, of this Complaint as if fully set forth herein.

28.     As alleged hereinabove, BFF, on the one hand, and Weathervane and FCP, on the other hand, entered into the written Agreement concerning the financing of four (4) motion picture projects.

29.     In addition to the express provisions of the Agreement set forth above, the Agreement contained an implied covenant that each party to the Agreement would conduct itself in good faith and would fairly deal with the other and, further, that the parties would not interfere with or deprive the others of the benefits of the Agreement.  Pursuant to this implied covenant, Weathervane and FCP had a duty to conduct themselves in accordance with the terms and conditions of the Agreement, and to otherwise not engage in any acts which would impair or harm BFF's rights under the Agreement and to receive the expected consideration and benefits thereunder.   By virtue of the relationship between BFF, on the one hand, and Weathervane and FCP, on the other hand, BFF placed its trust and confidence in Weathervane and FCP to perform all of their duties and obligations pursuant to the terms and conditions of the Agreement, and to honor the implied covenant to act in good faith in dealing with BFF, and to not take any actions which would impair or harm BFF's rights.

FIRST AMENDED COMPLAINT

30.     By engaging in the conduct herein alleged, including by repudiating their duties and obligations under the Agreement, Weathervane and FCP have materially breached express and implied terms and conditions of the Agreement, and have acted in bad faith by preventing and precluding BFF from receiving the full benefits and consideration under the Agreement.  As a direct and proximate result of the material breach and repudiation of the Agreement by Weathervane and FCP, none of the pictures intended to be financed by the parties were produced and BFF lost all of the payments, fees and other benefits which were intended to be received had the pictures been produced as contemplated by the Agreement.

31.     BFF is informed and believes and based thereon alleges that Weathervane and FCP pursued this course of conduct in bad faith with the intent to interfere with, injure and frustrate BFF's enjoyment of the benefits and rights conferred pursuant to the terms of the Agreement.

32.     BFF has performed all conditions, covenants and promises required pursuant to the terms of the Agreement, except to the extent such performance was waived, excused or prevented by reason of acts or omissions of BFF.

33.     As a direct and proximate result of the material breaches of the Agreement by Weathervane and FCP, BFF has suffered damages in an amount according to proof at trial, but which is believed to be not less than $6 million.  When BFF has ascertained the full amount of its damages, it will seek leave of Court to amend this Complaint accordingly.

## SECOND CAUSE OF ACTION

### (For Fraud – Against All Defendants)

34.     BFF realleges, adopts and incorporates by reference, each and every allegation contained in Paragraphs 1 through 26, inclusive, of this Complaint as if fully set forth herein.

35.     As alleged, in 2014 and prior to BFF entering into the Agreement, including (1) in or around August 2014, during telephone conversations and email

1   correspondence between Van Eman and McConley, on the one hand, and BFF's

2   transactional attorney Kevin Koloff, on the other hand, (2) during a November 6,

3   2014 conference call between Zoch, McConley, and Van Eman, on the one hand, and

4   BFF's transactional attorney Kevin Koloff, on the other hand, (3) during a November

5   2014 meeting that took place at the American Film Market between Van Eman and

6   McConley, on the one hand, and BFF's principal Jonathan Baker and transactional

7   attorney Kevin Koloff, on the other hand, (4) during a November 2014 conference

8   call between Rafael, McConley, and Van Eman, on the one hand, and  BFF's

9   transactional attorney Kevin Koloff, on the other hand, and (5) during a December 3,

10  2014 conference call between Van Eman, McConley, and Zoch, on the one hand, and

11  BFF's principal Jonathan Baker and transactional attorney Kevin Koloff, on the other

12  hand, Van Eman (both individually and on behalf of Weathervane) and McConley

13  (both individually and on behalf of FCP) represented to BFF that, among other things:

14  (1) WFA and WFB were aware of and approved the Agreement, and would maintain

15  and manage the master production account where the funds for the pictures would be

16  invested; (2) Weathervane and FCP had a securitized line of credit with WFB

17  sufficient for Weathervane and FCP to satisfy all of their financial commitments

18  under the Agreement; (3) WFB and WFA were prepared to financially back

19  Weathervane and FCP's financial obligations under the Agreement, and would issue

20  an equity line of credit to Weathervane and FCP for each of the four pictures in the

21  amounts provided by the Agreement; and (4) Weathervane, FCP, WFA and WFB had

22  previously worked together on similar terms to fund 17 other films, which films had

23  purportedly been fully funded and produced.

24       36.   As alleged, in 2014 and prior to BFF entering into the Agreement,

25  including (1) during a November 6, 2014 conference call between Zoch, McConley,

26  and Van Eman, on the one hand, and  BFF's transactional attorney Kevin Koloff, on

27  the other hand, and (2) during a December 3, 2014 conference call between Van

28  Eman, McConley, and Zoch, on the one hand, and BFF's principal Jonathan Baker

1  and transactional attorney Kevin Koloff, on the other hand, Zoch (on behalf of WFA)

2  represented to BFF that, among other things:  (1) WFA and WFB were aware of and

3  approved the Agreement, and would maintain and manage the master production

4  account where the funds for the pictures would be invested; (2) Weathervane and

5  FCP had a securitized line of credit with WFB sufficient for Weathervane and FCP

6  to satisfy all of their financial commitments under the Agreement; (3) WFB and WFA

7  were prepared to financially back Weathervane and FCP's financial obligations under

8  the Agreement, and would issue an equity line of credit to Weathervane and FCP for

9  each of the four pictures in the amounts provided by the Agreement; and (4)

10  Weathervane, FCP, WFA and WFB had previously worked together on similar terms

11  to fund 17 other films, which films had purportedly been fully funded and produced.

12      37.   As alleged, in 2014 and prior to BFF entering into the Agreement,

13  including during a November 2014 conference call between Rafael, McConley, and

14  Van Eman, on the one hand, and  BFF's transactional attorney Kevin Koloff, on the

15  other hand, Rafael (on behalf of WFB and WFA) represented to BFF that, among

16  other things:  (1) WFA and WFB were aware of and approved the Agreement, and

17  would maintain and manage the master production account where the funds for the

18  pictures would be invested; (2) Weathervane and FCP had a securitized line of credit

19  with WFB sufficient for Weathervane and FCP to satisfy all of their financial

20  commitments under the Agreement; (3) WFB and WFA were prepared to financially

21  back Weathervane and FCP's financial obligations under the Agreement, and would

22  issue an equity line of credit to Weathervane and FCP for each of the four pictures in

23  the amounts provided by the Agreement; and (4) Weathervane, FCP, WFA and WFB

24  had previously worked together on similar terms to fund 17 other films, which films

25  had purportedly been fully funded and produced.

26      38.   As further alleged, after Weathervane and FCP failed to timely make

27  their matching contributions under the Agreement, Van Eman (both individually and

28  on behalf of Weathervane), McConley (both individually and on behalf of FCP),

Zoch (on behalf of WFA) and Rafael (on behalf of WFB and WFA) repeatedly represented to and assured BFF (through BFF's principal Jonathan Baker and transactional attorney Kevin Koloff) that WFA and WFB continued to financially back the obligations of Weathervane and FCP under the Agreement and were prepared to provide the lines of credit to finance the four pictures under the Agreement, and that Weathervane's and FCP's matching equity contributions would be forthcoming.  These further representations and assurances were made, among other occurrences: (1) in a series of February 2, 2015 emails between Zoch (on behalf of WFA), Rafael (on behalf of WFA and WFB), Van Eman, McConley, and BFF's transactional attorney Kevin Koloff, in which Rafael confirmed that the master production account for one of the pictures under the Agreement had been set up and that the contract for that picture had been "filed with WF's back office"; and (2) in an April 2, 2015 from Rafael to BFF's transactional counsel Kevin Koloff and BFF's principal Jonathan Baker, in which he wrote as follows:

> "I can confirm that everything has been prepared and that the account is ready to be funded. FCP and FCC are under the same umbrella and ***Forrest Capital and Ben Mcconley are in great standing***. Mr. Mcconley, Forrest Capital and Co, Forrest Capital Partners along with his other businesses are considered to be one of our more ***elite clients***."

39.    The foregoing representations were false, or made recklessly and without regard for the truth. Specifically, BFF is informed and believes and based thereon alleges that at the time the foregoing representations were made by Van Eman (both individually and on behalf of Weathervane), McConley (both individually and on behalf of FCP), Zoch (on behalf of WFA) and Rafael (on behalf of WFB and WFA), they knew (1) that WFA and WFB did not intend to financially back the obligations of Weathervane and FCP under the Agreement and had no intent to maintain and manage the master production account where the funds for the motion picture projects would be invested, (2) that WFA and WFB did not intend to issue a line of credit to

14

Weathervane and FCP to co-finance the production of the motion pictures contemplated by the parties' Agreement, (3) that Weathervane and FCP had no intention or ability to fund their matching contributions under the Agreement, and (4) that many (if not all) of the previous film projects on which Weathervane, FCP, WFA, and WFB had purportedly worked together had not been fully funded or produced, and had actually given rise to claims of fraud against all defendants.

40.    BFF is informed and believes and based thereon alleges that the foregoing representations were made with the intention of inducing BFF to enter into the Agreement and/or to transfer substantial amounts of money to Weathervane, FCP, WFA, and WFB for the benefit of all defendants, and BFF did in fact reasonably and justifiably rely on the aforesaid representations to its detriment by entering into the Agreement and transferring at least $1,500,000 into the master production account, and by expending significant amounts on development and production costs affiliated with the contemplated motion pictures to be financed under the Agreement, all in reliance on the aforesaid representations.

41.    As further evidence of the defendants' fraudulent intent, there have been at least ten other lawsuits filed against one or more of the same defendants, which arise out of the same type of motion picture co-financing scheme and misrepresentations at issue in this lawsuit.  BFF is also informed and believes that the Federal Bureau of Investigation and the United States Attorneys' Office is currently investigating the ponzi scheme engaged in by the defendants hereto.  Accordingly, it appears that the defendants have engaged in a regular pattern and practice of making fraudulent misrepresentations in order to induce unsuspecting companies like BFF to invest significant funds, time, and resources, and incur substantial expenses in the purported co-financing of motion pictures.

42.    As a direct and proximate result of the aforesaid fraudulent conduct, BFF has suffered damages in an amount according to proof at trial, but which is believed to be not less than $6 million.  When BFF has ascertained the full amount of its

1    damages, it will seek leave of Court to amend this Complaint accordingly.

2    43.    BFF is informed and believes and based thereon alleges that all of the

3    defendants, in doing the things herein alleged, acted willfully, maliciously,

4    oppressively and despicably with the full knowledge of the adverse effect of their

5    actions on BFF, and with willful and deliberate disregard of the consequences to BFF

6    such as to constitute oppression, fraud or malice.  By reason thereof, BFF is entitled

7    to recover punitive and exemplary damages from all defendants in an amount

8    appropriate to punish or set an example of the defendants and to deter them from

9    engaging in such conduct in the future.

10   **THIRD CAUSE OF ACTION**

11   **(For Negligent Misrepresentation – Against All Defendants)**

12   44.    BFF realleges, adopts and incorporates by reference, each and every

13   allegation contained in Paragraphs 1 through 26, inclusive, of this Complaint as if

14   fully set forth herein.

15   45.    As alleged, in 2014 and prior to BFF entering into the Agreement,

16   including (1) in or around August 2014, during telephone conversations and email

17   correspondence between Van Eman and McConley, on the one hand, and BFF's

18   transactional attorney Kevin Koloff, on the other hand, (2) during a November 6,

19   2014 conference call between Zoch, McConley, and Van Eman, on the one hand, and

20   BFF's transactional attorney Kevin Koloff, on the other hand, (3) during a November

21   2014 meeting that took place at the American Film Market between Van Eman and

22   McConley, on the one hand, and BFF's principal Jonathan Baker and transactional

23   attorney Kevin Koloff, on the other hand, (4) during a November 2014 conference

24   call between Rafael, McConley, and Van Eman, on the one hand, and  BFF's

25   transactional attorney Kevin Koloff, on the other hand, and (5) during a December 3,

26   2014 conference call between Van Eman, McConley, and Zoch, on the one hand, and

27   BFF's principal Jonathan Baker and transactional attorney Kevin Koloff, on the other

28   hand, Van Eman (both individually and on behalf of Weathervane) and McConley

(both individually and on behalf of FCP) represented to BFF that, among other things: (1) WFA and WFB were aware of and approved the Agreement, and would maintain and manage the master production account where the funds for the pictures would be invested; (2) Weathervane and FCP had a securitized line of credit with WFB sufficient for Weathervane and FCP to satisfy all of their financial commitments under the Agreement; (3) WFB and WFA were prepared to financially back Weathervane and FCP's financial obligations under the Agreement, and would issue an equity line of credit to Weathervane and FCP for each of the four pictures in the amounts provided by the Agreement; and (4) Weathervane, FCP, WFA and WFB had previously worked together on similar terms to fund 17 other films, which films had purportedly been fully funded and produced.

46.    As alleged, in 2014 and prior to BFF entering into the Agreement, including (1) during a November 6, 2014 conference call between Zoch, McConley, and Van Eman, on the one hand, and  BFF's transactional attorney Kevin Koloff, on the other hand, and (2) during a December 3, 2014 conference call between Van Eman, McConley, and Zoch, on the one hand, and BFF's principal Jonathan Baker and transactional attorney Kevin Koloff, on the other hand, Zoch (on behalf of WFA) represented to BFF that , among other things:  (1) WFA and WFB were aware of and approved the Agreement, and would maintain and manage the master production account where the funds for the pictures would be invested; (2) Weathervane and FCP had a securitized line of credit with WFB sufficient for Weathervane and FCP to satisfy all of their financial commitments under the Agreement; (3) WFB and WFA were prepared to financially back Weathervane and FCP's financial obligations under the Agreement, and would issue an equity line of credit to Weathervane and FCP for each of the four pictures in the amounts provided by the Agreement; and (4) Weathervane, FCP, WFA and WFB had previously worked together on similar terms to fund 17 other films, which films had purportedly been fully funded and produced.

47.    As alleged, in 2014 and prior to BFF entering into the Agreement,

including during a November 2014 conference call between Rafael, McConley, and Van Eman, on the one hand, and BFF's transactional attorney Kevin Koloff, on the other hand, Rafael (on behalf of WFB and WFA) represented to BFF that, among other things: (1) WFA and WFB were aware of and approved the Agreement, and would maintain and manage the master production account where the funds for the pictures would be invested; (2) Weathervane and FCP had a securitized line of credit with WFB sufficient for Weathervane and FCP to satisfy all of their financial commitments under the Agreement; (3) WFB and WFA were prepared to financially back Weathervane and FCP's financial obligations under the Agreement, and would issue an equity line of credit to Weathervane and FCP for each of the four pictures in the amounts provided by the Agreement; and (4) Weathervane, FCP, WFA and WFB had previously worked together on similar terms to fund 17 other films, which films had purportedly been fully funded and produced.

48.    As further alleged, after Weathervane and FCP failed to timely make their matching contributions under the Agreement, Van Eman (both individually and on behalf of Weathervane), McConley (both individually and on behalf of FCP), Zoch (on behalf of WFA) and Rafael (on behalf of WFB and WFA) repeatedly represented to and assured BFF (through BFF's principal Jonathan Baker and transactional attorney Kevin Koloff) that WFA and WFB continued to financially back the obligations of Weathervane and FCP under the Agreement and were prepared to provide the lines of credit to finance the four pictures under the Agreement, and that Weathervane's and FCP's matching equity contributions would be forthcoming. These further representations and assurances were made, among other occurrences: (1) in a series of February 2, 2015 emails between Zoch (on behalf of WFA), Rafael (on behalf of WFA and WFB), Van Eman, McConley, and BFF's transactional attorney Kevin Koloff, in which Rafael confirmed that the master production account for one of the pictures under the Agreement had been set up and that the contract for that picture had been "filed with WF's back office"; and (2) in

1  an April 2, 2015 from Rafael to BFF's transactional counsel Kevin Koloff and BFF's
2  principal Jonathan Baker, in which he wrote as follows:

3        "I can confirm that everything has been prepared and that the account is
4        ready to be funded. FCP and FCC are under the same umbrella and
5        ***Forrest Capital and Ben Mcconley are in great standing***. Mr.
6        Mcconley, Forrest Capital and Co, Forrest Capital Partners along with
7        his other businesses are considered to be one of our more ***elite clients***."

8        49.    The foregoing representations were false.  However, even if Van Eman,
9  McConley, Zoch, and/or Rafael were not aware of the falsity of the foregoing
10  representations at the time the representations were made, they nevertheless had no
11  reasonable grounds for believing the truth of the representations, as they should have
12  been aware (1) that WFA and WFB did not intend to financially back the obligations
13  of Weathervane and FCP under the Agreement and had no intent to maintain and
14  manage the master production account where the funds for the motion picture projects
15  would be invested, (2) that WFA and WFB did not intend to issue a line of credit to
16  Weathervane and FCP to co-finance the production of the motion pictures
17  contemplated by the parties' Agreement, (3) that Weathervane and FCP had no
18  intention or ability to fund their matching contributions under the Agreement, and (4)
19  that many (if not all) of the previous film projects on which Weathervane, FCP, WFA,
20  and WFB had purportedly worked together had not been fully funded or produced,
21  and had actually given rise to claims of fraud against all defendants.

22        50.    BFF is informed and believes and based thereon alleges that the
23  foregoing representations were made with the intention of inducing BFF to enter into
24  the Agreement and/or to transfer substantial amounts of money to Weathervane, FCP,
25  WFA, and WFB for the benefit of all defendants, and BFF did in fact reasonably and
26  justifiably rely on the aforesaid representations to its detriment by entering into the
27  Agreement and transferring at least $1,500,000 into the master production account,
28  and by expending significant amounts on development and production costs affiliated

with the contemplated motion pictures to be financed under the Agreement, all in reliance on the aforesaid representations.

51.    As a direct and proximate result of the aforesaid negligent conduct, BFF has suffered damages in an amount according to proof at trial, but which is believed to be not less than $6 million.  When Plaintiff has ascertained the full amount of its damages, it will seek leave of Court to amend this Complaint accordingly.

## PRAYER FOR RELIEF

**AS TO THE FIRST CAUSE OF ACTION:**

1.    For monetary damages in an amount not less than $6,000,000 in accordance with proof at trial, together with interest thereon at the maximum legal rate;

2.    For reasonable attorneys' fees and costs as provided for under the Agreement;

**AS TO THE SECOND CAUSE OF ACTION:**

3.    For general and special damages in an amount not less than $6,000,000 in accordance with proof at trial, together with interest thereon at the maximum legal rate;

4.    For exemplary and punitive damages in an amount according to proof at the time of trial;

**AS TO THE THIRD CAUSE OF ACTION:**

5.    For general and special damages in an amount not less than $6,000,000 in accordance with proof at trial, together with interest thereon at the maximum legal rate;

**AS TO ALL CAUSES OF ACTION:**

6.    For all costs of suit;

7.    For the maximum interest as may be provided by law;

8.    For all attorneys' fees incurred by Plaintiff in pursuing this action as provided by the Agreement, and/or for reasonable attorneys' fees as may otherwise

1  be provided by law; and

2      9.    For such other and further relief as deemed just and proper.

3

4  DATE: March 6, 2017                    LAVELY & SINGER
                                          PROFESSIONAL CORPORATION
5                                         BRIAN G. WOLF
                                          DAVID B. JONELIS
6

7                                         By:_____/s/_____
                                                BRIAN G. WOLF
8                                         Attorneys for Plaintiff BAKER FILM
                                          FUND, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2       Plaintiff BAKER FILM FUND, LLC respectfully requests a trial by jury on all

3   triable issues set forth in this First Amended Complaint.

4

DATE: March 6, 2017                            LAVELY & SINGER

5                                              PROFESSIONAL CORPORATION
                                               BRIAN G. WOLF

6                                              DAVID B. JONELIS

7

                                               By:_____/s/_____

8                                                    BRIAN G. WOLF
                                               Attorneys for Plaintiff BAKER FILM

9                                              FUND, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28